## JOHN WINSLOW vs. OZIAS GOODWIN & others.

Contingent interests, both in real and personal estate, are transmissible like vested interests.

A., by his will, gave his property, real and personal, to B. in trust, to hold and manage the same during the life or widowhood of A.'s wife, and pay the rents and income thereof to her, and after her death or marriage to divide said property into seven parts, and to hold one seventh in trust for the sole and separate use of the testator's daughter S., wife of W., and to convey the same, upon the death of W., to S. and her heirs: The will further directed, that if S. should die in the life time of W., then B. should hold said seventh in trust for her children, and that such of her children as should then be of full age should receive their respective shares of said seventh, and that the shares of such of S.'s children as should then be minors, should be paid over to them respectively, by B., on their coming of full age: After the death of A.'s widow, S. died, in the life time of W. her husband, they having had nine children, all of whom were born during the life of the testator. Two of these children, after arriving at full age, died intestate, and without issue, while S. was alive; one of them, after the death of S., died under age, without issue and unmarried; and W. was appointed administrator of his said deceased children. Held, that all the children of S. took, severally and not jointly, a contingent interest in the one seventh of the property devised to her for life, and that W.. as heir of said deceased children, was entitled to three ninths of said seventh of the real estate and, as their administrator, to three ninths of said seventh of the personal property.

THIS was a bill in equity, in which it was prayed that Ozias Goodwin, one of the defendants, might be decreed to render an account of certain property, real and personal, in his hands as trustee under the last will of John Bray, deceased, and to convey to the plaintiff three undivided ninths of one seventh part of

said property.    As the ground of this prayer, the bill contained the following statements :

That said Bray, by his will made in August 1828, and proved and allowed in September 1829, gave all his real and personal property (after payment of his debts and of certain legacies) to Matthias Crocker and James Loring, in trust, to hold and manage the same during the life of said testator's wife, Sarah Bray, provided she should continue to be a widow, and to pay to her the rent and income thereof, during her life or widowhood, for her own use ; but if she should marry, then she should have such portion of his estate as she would have been entitled to if he had made no will ; and on the further trust, thus expressed in said will :   " After the decease or marriage of said Sarah, to cause all the said rest and residue of my estate to be divided into seven equal parts, and to convey, assign and make over one of said seven parts to each of my daughters, Abigail, Elizabeth, Charlotte, Louisa and Augusta, and to their respective heirs, and to hold in trust one seventh part of said rest and residue to the sole and separate use of my daughter, Sarah Spear Winslow, free from all control, claim or demand of her present husband, Mr. John Winslow," (the plaintiff,) " or any creditor of said John ; and from and immediately after his decease, to convey, assign and make over unto said Sarah Spear Winslow the same seventh part, to have and hold the same to her and her heirs.   But if she shall die in the life time of her said husband, then to hold said seventh part in trust for her children, or so much thereof as may remain, if any part thereof shall have been applied to their mother's support and maintenance :  And my said trustees are hereby authorized and empowered to use and apply so much of said seventh, as they may think necessary and proper, for the reasonable support of said daughter Sarah, during the life time of her said husband, from time to time ; and if said Sarah shall decease in the life time of her husband, such of her children as may then be of full age are to receive their respective shares of said seventh, or of what may remain thereof ; and as to the parts of such children of said Sarah as may then be minors, my trustees are authorized and empowered to apply and use so much of

each one's share, for his or her support and education, as said trustees may think necessary, and to pay over and convey to them the residue, if any, of his or her share respectively, on coming to full age."

That said testator, after disposing of the other seventh of the residue of his property, by said will, added thereto the following clauses : " My will is, that no charge or claim be made against my daughter, Sarah Spear Winslow, for money, goods or property, by me advanced or supplied to her, and that no deduction be made from her seventh, on account thereof, nor on account of any debts due to me from Mr. Winslow, her husband." " I authorize, request and empower the judge of probate for the time being, in case either of the trustees shall decease before this trust is executed, to appoint another trustee in his place, and to renew said trusteeship from time to time ; and any trustee or trustees so appointed are to be constituted such by all proper conveyances and instruments, as though originally appointed by me ; and my trustees are to receive such reasonable compensation as the judge of probate may think proper. I revoke all former wills, and appoint said Crocker and Loring executors hereof."

That said Crocker declined to accept the trusts given him by the will ; that said Loring accepted the same and gave bond ; but that he resigned his trusts in January 1837, when the defendant Goodwin was appointed trustee under the will, and received personal property amounting to $16,221, and real property of the value of $14,000, to hold upon the trusts expressed in the will ; that said property, or the proceeds of it, still remained in the hands of said Goodwin, as such trustee, and that he had collected the rents, income and profits of it.

That said Sarah Bray died in 1839, and that said Sarah Spear Winslow, wife of the plaintiff, died in October 1841, having had nine children by him, viz. John, William H., Charles E., Horatio B., Ozias G , Sarah A., George C., Andrew G. (still a minor) and Caroline L. : That three of these children, viz. William H., Charles E. and Horatio B., died before their mother : That William H. died in October 1833, aged 23 years, intestate, without

31 *

issue; Charles E. died May 23d 1837, aged 25 years, intestate leaving a child, Charles H., and a widow, Marianne, who has since married T. Pinkerton; Horatio B. died November 1st 1840, intestate, unmarried and without issue, aged 22 years: That the plaintiff had been appointed administrator of the estates of said William H. and Horatio B.; and that no administration had been taken on the estate of said Charles E.: That three others of said nine children, viz. Ozias G., Sarah A. and Caroline L., died after their mother: That Ozias G. died December 3d 1842, leaving issue surviving him, viz. Nathan F. and Caroline L., both minors; and also a widow, Julia, who has been appointed administratrix of his estate: That Sarah A. died July 23d 1842, leaving a will, of which the aforesaid George C. is executor: That Caroline L., daughter of the plaintiff, died December 24th 1841, under age, without issue, and unmarried, and that the plaintiff was appointed her administrator on the 21st of November 1842.

That on the death of said John Bray, (the testator,) each of the nine children of the plaintiff, and Sarah Spear Winslow, his wife, became entitled, under said will, to one ninth of one seventh part of the testator's property, real and personal, subject to the trust estate for the life of his widow and the life of the plaintiff's wife, and upon the contingency of the plaintiff's surviving his wife; and that, on the death of said William H. and Horatio B., their right to two ninths of one seventh of said real estate vested in the plaintiff, as their heir, and their right to two ninths of one seventh of said personal estate vested in him, as their administrator; and that, on the death of said Caroline L., one ninth of one seventh part of said real estate descended to the plaintiff, as her heir, and that he became entitled to one ninth of one seventh of said personal property, as her administrator.

That on the death of Sarah Spear Winslow, the plaintiff's wife, it became the duty of said Goodwin, as trustee, to convey to the plaintiff, as heir of said William H. and Horatio B., two ninths of one seventh of said real property in his hands, and that it has since become his duty to pay and convey to the plaintiff two ninths of one seventh of said personal property in

his hands ; and that, on the death of said Caroline L., it be-
came his duty to convey to the plaintiff, as her heir, one ninth
of one seventh of said real property in his hands, and has since
become his duty to pay and convey to the plaintiff, as her
administrator, one ninth of one seventh of said personal prop-
erty :    All which the said Goodwin has refused to do, though
often thereto requested by the plaintiff.

All the surviving children of said Sarah Spear Winslow, all
the children of her deceased children, the administratrix of her
son Ozias G., Marianne, formerly wife of said Sarah's son
Charles E., deceased, and T. Pinkerton, the present husband of
said Marianne, were made parties to the bill, as defendants.
Goodwin and all the other defendants, except three, demurred
to the bill.    The other three defendants put in an answer, ad-
mitting the facts alleged in the bill, and submitting to the de-
cision of the court thereon.

*Sewall,* for the plaintiff.    All the children of Mrs. Winslow,
who were alive when the testator died, took an interest in his
real and personal property, and on the death of part of them,
during their mother's life, their shares went to their respective
representatives.    In regard to the real estate, all those children
took a contingent remainder ; the contingency being that of
their father's surviving their mother. There was no contingency
as to the persons to take.    They were certain, viz. all the chil-
dren.    This has been considered, by the courts, a vested interest
in a contingent remainder.    On the death of some of them,
their interests descended to their heirs.    The plaintiff claims as
heir of three of them.

The word " children," in this will, does not mean the chil-
dren living at the death of Mrs. Winslow, the tenant for life,
but all her children.    In 2 Pow. Dev. (Jarman's ed.) 303, 304,
it is said that where a particular estate or interest is carved out,
with a gift over to the children of the person taking that interest,
or of any other persons, the children, if any, living at the death
of the testator, take an immediate vested interest in their shares,
subject to the diminution of those shares ; that is, to their being
devested *pro tanto.* as the number of objects is augmented by

future births during the life of the tenant for life; and consequently, on the death of any of the children during the life of the tenant for life, their shares devolve upon their representatives. The same doctrine was held in *Denny* v. *Allen*, 1 Pick. 147. The only difference between that case and the present is, that the remainder there was vested, and here was contingent till Mrs. Winslow's death. But a contingent remainder descends precisely like a vested one. Fearne, (7th ed.) 364. *Roe* v. *Jones*, 1 H. B. 30, and 3 T. R. 88.

The devise of the real estate to the children of Mrs. Winslow was not to them as joint tenants, but as tenants in common, so that it did not go to her surviving children. *St.* 1785, c. 62, § 4. *Nash* v. *Cutler*, 16 Pick. 491.

In regard to the personal property, the same rules of construction are to prevail. It was not a joint legacy, and therefore did not go to the surviving children. *Emerson* v. *Cutler*, 14 Pick. 108. Ward on Legacies, 227. *Gant* v. *Laurence*, Wightw. 395. The children, who died before their mother, also took an interest transmissible to their representatives. The parties who were to take were ascertained, though their interest was contingent; the contingency being their father's surviving their mother. One kind of contingent remainders is, " where some uncertain event, unconnected with and collateral to the determination of the preceding estate, is, by the nature of the limitation, to precede the remainder." Fearne, (7th ed.) 6. Such is the nature of the remainder in the present case. Another kind of contingent remainders, (as stated by Fearne, p. 9,) is " where a remainder is limited to a person not ascertained, or not in being at the time when such limitation is made." The present case would have been of this kind, if the limitation had been to the children of Mrs. Winslow who might survive her. But as the word " children " means all her children, there was no uncertainty as to the persons, but only an uncertainty as to the happening of the event which was to entitle them to take. Though their interest in the property was contingent, during her life, because it was uncertain whether her husband would survive her, yet the interest was vested in

another sense, because it was ascertained that they were the persons to take, in case the contingency should occur.

The precise point raised in this case has been settled by a series of decisions in England, running back more than a century. In *Pinbury* v. *Elkin,* 1 P. W. 563, a testator gave all his personal property to his wife, with a condition, that if she should die without issue by him, then after her death £80 should remain to his brother. The brother died during the life time of the widow, and she died without issue. It was held, that the executor of the brother should have the £80. The case of *Barnes* v. *Allen,* 1 Bro. C. C. 181, is still stronger, and is not distinguishable from the case at bar. The testator there gave the residue of his personal property to his wife for life, and if she should die without issue living at his death, to his two brothers, or, if one of them should be dead, to the survivor. The brothers both died in the life time of the widow. The legacy was held to be vested in both, as joint tenants, and to go to the representatives of the survivor. The same doctrine is supported by the following cases: *King* v. *Withers,* Cas. Temp. Talb. 117. *Chauncy* v. *Grayson,* 2 Atk. 616. *Walker* v. *Shore,* 15 Ves. 122. *Corbett* v. *Palmer,* 3 Eq. Cas. Ab. 548. *Molesworth* v. *Molesworth,* 3 Bro. C. C. 5, and 4 Bro. C. C. 408. *Benyon* v. *Maddison,* 2 Bro. C. C. 75. *Medlicot* v. *Bowes,* 1 Ves. sen. 207. *Exel* v. *Wallace,* 2 Ves. sen. 117. *Hatch* v. *Mills,* 1 Eden, 342. *Monkhouse* v. *Holme, Attorney General* v. *Crispin,* and *Devisme* v. *Mello,* 1 Bro. C. C. 298, 386, 537. *Scurfield* v. *Howes,* 3 Bro. C. C. 90. *Blamire* v. *Geldart,* 16 Ves. 314. *Anon.* 2 Vent. 347. *Brown* v. *Bigg,* 7 Ves. 279. *Lady Lincoln* v. *Pelham,* 10 Ves. 166. *Perry* v. *Woods,* 3 Ves. 204. *Stanley* v. *Wise,* 1 Cox, 432. *Smith* v. *Streatfield,* 1 Meriv. 358. Ward on Legacies, 174, 175.

The case of *Denny* v. *Allen,* 1 Pick. 147, seems adverse to the plaintiff's claim, as representative of his two sons, William H. and Horatio B., who died before his wife. But the authorities now cited were not then presented to the court; and the case of *Baldwin* v. *Karver,* Cowp. 309, there referred to by the court, did not raise the question. Nor was this question decided

in *Hancock* v. *Hancock*, 14 Pick. 70.   The case of *Shattuck* v. *Stedman*, 2 Pick. 468, is directly at variance with *Denny* v *Allen* on this point.   The only difference between *Shattuck* v. *Stedman* and the case at bar is, that in the former there was no contingency.   But if the English cases, already cited, are to be relied on, this difference is unimportant.   The case of *Ballard* v. *Ballard*, 18 Pick. 41, though it related to real property only, is a strong authority for the plaintiff.

As the defendant's daughter, Caroline L., died under age, it will be contended, on behalf of her surviving brothers, that her share never vested.   But the will does not make the shares of the children to depend on their coming of age.   It directs that if Mrs. Winslow should die in her husband's life time, the trustees shall hold the property " in trust for her children."   The subsequent provisions of the will do not vary these words, but only direct how long the trust shall continue ; viz. until the children respectively come of age.   Though the payment of the shares of the children who might be minors is partially postponed till their majority, yet the shares are recognized as theirs, even while they are minors.   The words are, " the parts of such children of said Sarah as may then be minors ; " and the trustees are authorized " to apply and use so much of each one's share, for his and her support, &c. and to pay over and convey to them the residue, if any, of his or her share, respectively on coming to full age."   And the postponement of the payment of a legacy till the legatee comes of age does not prevent it from vesting.   1 Roper on Leg. (1st Amer. ed.) 376.   *Goodtitle* v. *Whitby*, 1 Bur. 228.   *Steadman* v. *Palling*, 3 Atk. 427.   *Emerson* v. *Cutler*, 14 Pick. 108.   *Paterson* v. *Ellis*, 11 Wend. 259.

As the property did not come to the children " by inheritance " from their mother, but under the will of their grandfather, this case does not fall within the Rev. Sts. *c.* 61, § 1, which provide that where one of two or more children die under age and unmarried, his estate shall descend to the other children.

*Aylwin & Paine*, for the defendants.   The devise to Mrs. Winslow and her children was manifestly contingent as to the

whole seventh part of the real and personal property. And how can it be supposed that the remainder in this seventh vested in the children at the testator's death? How could it vest in them, when their mother would have taken the whole, if she had survived her husband, and they would have taken nothing? The following authorities are directly in point: *Blanchard* v. *Brooks*, 12 Pick. 63. *Dixon* v. *Picket*, 10 Pick. 517. *Hancock* v. *Hancock*, and *Emerson* v. *Cutler*, 14 Pick. 70, 108. *Nash* v. *Cutler*, 16 Pick. 496. *Harris* v. *Knapp*, 21 Pick. 416.

It is contended, however, by the plaintiff, that a contingent remainder descends precisely like a vested one. But the doctrine, that a contingent remainder may descend, has one important qualification, viz. that where the existence of the devisee of it at some particular time makes, by implication, part of the contingency, or enters into it, the remainder cannot descend. Fearne, (7th ed.) 364. 14 Petersd. Ab. (Amer. ed.) 164. 4 Kent Com. (1st ed.) 254, 255. In the present case, the event and the persons were uncertain. Besides; it is the settled law of this Commonwealth, (however it may be in England,) that in a devise like the present, the existence of the devisee of a contingent remainder at the death of the devisee for life makes a part of the contingency. In *Dingley* v. *Dingley*, 5 Mass. 537, a devise of land to B. for life, and at his death to be equally divided among his sons, was held to give a vested remainder to those alive at the testator's death, which opened to let in after-born sons: But Parsons, C. J. said, " of a chattel there can be no remainder which may vest and afterwards open to let in after-born children, and the interest in it must be contingent until the time provided for the distribution of it, in order that they may take." This has ever since been regarded as established law here, and was confirmed and acted on in *Denny* v. *Allen*, 1 Pick. 147 ; in the elaborately argued case of *Emerson* v. *Cutler*, 14 Pick. 108 ; and in *Pool* v. *Ward*, 21 Pick. 400.

As to real estate, it is submitted, that where the remainder is made contingent, so as to prevent its vesting at the death of

the testator, and until the happening of the contingency, those who are then alive and answer the description will take, to the exclusion of those who may have previously died, and their representatives. And until the contingency happens, the estate remains in the heirs of the testator, if he has not devised to trustees to hold in the interim.

The testator in the present case did not contemplate the death of any of his daughter Winslow's children during her life, and leaving issue, and therefore the word " children," used by him, should be construed to mean children alive at her death. It is only from necessity, and to reconcile the various parts of a will, that the construction contended for by the plaintiff can be given to the word " children." See *Radcliffe* v. *Buckley*, 10 Ves. 195, where this subject is fully considered by Sir William Grant. The argument for the plaintiff disregards the dictinction between a contingency depending on the person to take, and a contingent interest. In the latter, it seems by the authorities, the representatives may take, when the event occurs, though the first taker pointed out may not be in existence. In the former, nothing passes till the contingency occurs.

The general expression in the will, " in trust for her children," is afterwards qualified and limited by a particular description of such as were either of age or minors ; that is, then living. So the giving of the legal estate to trustees during Mrs. Winslow's life serves to show the intent of the testator, that no interest in the property should attach in the children till her death.

The plaintiff's claim to the share of his daughter, Caroline L., who died under age, after her mother, cannot be sustained. There is no devise to the children till after the death of their mother, and after they are of age. Until then, the legal estate was in the trustees, upon certain specified trusts and powers. The testator, in limiting the amount which the trustees might expend upon each child, during minority, used the expression, " each one's share ; " meaning the share he would have if he should live to 21 years of age. This expression does not denote a vested interest in the child, but merely limits the

power of the trustees.    The case is not one of vested interest and deferred payment.    The interest is not given till the children respectively come of full age.    *Billingsley* v. *Wills*, 3 Atk. 219.

On the whole will, the defendants contend:    1. That there being a contingency as to the person to take, such of the children of Mrs. Winslow as died before her had no interest in the subject matter of the devise, and could transmit none to their issue or representatives :    2. That the vesting of an interest in any of the children, alive at her death, also depended on the contingency of attaining the age of 21 years.

*Sewall*, in reply.    In every contingent remainder, it is of course doubtful who will be the person eventually to take the estate.    But there is a manifest difference between those remainders in which only persons who survive a particular event are to take, and those in which certain defined persons are to take on the happening of a particular event.    In the first case, it is obvious that no person who does not survive the event can have any transmissible estate ; but in the latter, it is equally obvious that a person who does not survive the event may yet have a transmissible estate.

The case of *Blanchard* v. *Brooks*, 12 Pick. 63, cited for the defendants, did not touch the point now before the court, but merely decided that a deed, in a particular form, made by a party who had a vested remainder in an undivided part of a parcel of land, and a contingent remainder in another undivided part, did not pass the contingent interest.    Whether the contingent remainder would have descended to his heirs, was a question not presented by the case.    *Dixon* v. *Picket*, 10 Pick. 517, merely decided that where a testator gave an estate to such of the Gordons as should be alive at his wife's death, the Gordons took a contingent remainder, depending on their surviving his wife.    And in *Emerson* v. *Cutler*, 14 Pick. 108, the remainder to the children was held to be contingent. because it was joint and would go to the survivors.    In the case at bar, the remainders are not joint.

The qualification of the rule, that contingent remainders

32

descend to heirs, &c., which the defendants cited from Fearne, is made sufficiently clear by the case of *Moorhouse* v. *Wainhouse*, 1 W. Bl. 638, to which Fearne refers. In that case the court held that the words of a settlement, which gave one moiety of a wife's land to the husband in fee, upon the death of his wife, required, in order to his estate's arising, that he should survive the wife; and therefore, as he died first, that he had no estate which would go to his heirs. The case at bar would be parallel, if the property, after Mrs. Winslow's death, had been given to the children who might survive her. But here the only contingency, on which the children were to take, was their father's surviving his wife. Their surviving her makes no part of the contingency.

The dictum of Parsons, C. J., cited from *Dingley* v. *Dingley*, 5 Mass. 537, was extrajudicial, and contrary to the decisions cited in the opening. So of the citation of this dictum, with apparent approbation, in *Pool* v. *Ward*, 21 Pick. 400.

WILDE, J. This case depends on the construction to be given to the last will of John Bray, the father of the plaintiff's wife, now deceased, as to the remainders thereby given to her children, and upon the rules of law as to the plaintiff's right and title to the shares of three of the children, who have died without issue since the death of the testator; two of them having died before, and one since, the death of their mother.

It is contended, on behalf of the plaintiff, 1st, that by the provision of the will, all the children of Mrs. Winslow, and not merely those who survived her, were the intended objects of the testator's bounty: 2d. That the interest of the said children, both in the real and personal estate, was several and not joint: 3d. That the shares of the children who died before their mother passed to their heirs and representatives, on their death, notwithstanding their interests were contingent upon the event of the plaintiff's surviving his wife: 4th. And lastly, that the interest of Caroline L. Winslow, who survived her mother, passed to the plaintiff, as her heir and administrator, although she died before she arrived at the age of 21 years.

In respect to the first point, we are of opinion that all the chil-

dren of Mrs. Winslow, living at the death of the testator, took a contingent interest in the estate devised to her for life. If there had been no contingency, by which their interests might be defeated, they would have taken vested remainders in the real estate, however the rule may be as to the personal estate, as to which it is not necessary to express an opinion; for unquestionably the children's interests before the death of their mother were contingent, both in the real and personal estate. But the question is not what their interests then were, whether vested or contingent, absolute or conditional, but whether they took any interest before the death of their mother. And we think they did. All the children were living at the decease of the testator, so that there is no question as to any claims of after-born children. The testator, we think, must have intended to provide for all the children, and this intent is expressed with sufficient clearness and certainty in the language of the will. The words are, " if she " (Mrs. Winslow) " shall die in the life time of her said husband, then to hold said seventh part in trust for her children." This must undoubtedly mean all her children; and, but for the subsequent clause, we think there could be no doubt as to the true meaning and construction of the will. But we consider this clause of the will as intended merely to fix the time or times when the children should respectively be entitled to the possession of the devised property; and in no other respect to limit or affect the construction of the devising clause. It has been argued by the defendants' counsel, that this last clause was intended as a description of the children who were to take on the death of their mother, and that none could take who were not designated by that description; so that no child could take any interest under this will, unless he or she were living at the decease of the mother, and unless he or she should attain the age of 21 years. But we think such a construction would be inconsistent with the previous devising clause, which gives the estate to the children generally; which must mean all the children, and which is equivalent to a gift to them *nominatim,* so far as to show that they were all the intended objects of the testator's bounty. In ascertaining the intention of the testator in this respect, t *s*

immaterial whether the remainder to the children was vested or contingent; and in this view the case of *Emerson* v. *Cutler*, 14 Pick. 108, is directly in point. In that case the testator gave a portion of his estate, real and personal, to his children, to be equally divided between them, and to be distributed to them as they should respectively arrive at the age of 21 years, and not before; and his executors were authorized to receive the rents, income, and interest of the said portion of his estate, real and personal, and to apply the same, or such part thereof as they should judge necessary, to the support and education of his children, until they respectively should arrive at the age of 21 years.

The plaintiff in that case married one of the daughters, who died before she arrived at the age of 21 years; and the court held that he, either in his own right as husband, or as administrator of his deceased wife, was entitled to his wife's share in the personal estate. There is no material distinction between that case and this, as to the question now under consideration. By the devising clause, the testator in the present case gave to Mrs. Winslow's children a portion of his estate, if she should die in the life time of her husband. And by this clause he undoubtedly intended to include all her children; and we are of opinion, that by the subsequent clause he only intended to give directions as to the time when the trust should cease, and the children should be entitled to possession of their shares in the property devised. This clause is not to be considered as a condition to the vesting of the children's shares; for if it were, then the shares of the minor children living at the decease of their mother, and who died before they arrived at the age of 21 years, would not go to their issue or representatives; and such is the argument maintained by the defendants' counsel. But we think it very clear, that on the death of Mrs. Winslow, the shares of the minor children vested in them absolutely and unconditionally The legal estate, it is true, continued in the trustees, but the equitable estate, the whole use and benefit thereof, vested in the minor children. It is said that there is no provision in the will authorizing the trustees to pay or convey to the representatives of any deceased child. But suppose that the direction had been

confined to the minor children as to the time when they should be entitled to possession, and nothing had been added as to the time when the other children were to come into possession; could it be contended that they would be excluded from taking the shares of the devised property expressly given them by a prior clause in the will? Certainly not; and so, in the present case, the omission to mention the representatives of such children as might die before their mother, will not defeat their claims, if they are otherwise sustained by the rules of law.

2d. In respect to the second question, we are of opinion that the children took their shares in severalty, and not jointly. On this point, the decision in *Emerson* v. *Cutler*, before cited, is conclusive; and all the authorities concur in the rules of construction in such cases.

3d. As to the third question, there are some conflicting decisions, but the law we think has long been well settled.

On the part of the defendants, it is contended that the children' interests in the estate devised to their mother being contingent, no one of them could take who was not living at the time the contingency happened. On the other hand, the plaintiff contends that all the children took interests in the estate devised, on the death of the testator, which, although contingent, were nevertheless transmissible to their representatives. And this doctrine, as to the transmissibility of contingent interests, in both real and personal estates, seems to be fully sustained by the English authorities.

" In general," says Fearne, " it seems, that contingent inter ests pass to the real or personal representatives, according to the nature of such interests, as well as vested interests, so as to entitle such representatives to them when the contingencies happen." Fearne, (7th ed.) 364. That this has long been the established law of England appears very clearly by the cases cited. Before the case of *Pinbury* v. *Elkin*, 1 P. W. 563, there had been, it seems, some conflicting decisions, which were taken into consideration in the decision of that case. There, one possessed of personal estate gave the same to his wife; provided that if she should die without issue by the said testator, then

after her decease, £80 should remain to the testator's brother. The brother died in the life time of the widow, who afterwards died, leaving no issue; and it was held, that the brother's executor was entitled to the legacy. Lord Chancellor Parker, in that case, said it was true, that in Swinburne on Wills, 461, 462, "some cases were put which seemed to import the contrary; but those cases were so darkly put, and with so many inconsistencies, as to be well overbalanced by the opinion of Lord Nottingham, in 2 Vent. 347, where a man devised £100 to A. at the age of 21 years, and if A. died under age, then to B. B died in the life time of A., and afterwards A. died under age, yet decreed that the executors of B. should have this £100." The decisions in both these cases were approved by Lord Talbot, in *King* v. *Withers*, Cas. Temp. Talb. 117, and by Lord Hardwicke, in *Chauncy* v. *Graydon*, 2 Atk. 616. The principle, as there laid down by Lord Hardwicke, is, that "where either real or personal estate is given upon a contingency, and that contingency does not take effect in the life time of the first devisee, yet, if real, his heir, if personal, his executor, will be entitled to it." The same principle is again laid down by Lord Hardwicke, in *Hodgson* v. *Rawson*, 1 Ves. sen. 46; and again in *Medlicot* v. *Bowes*, 1 Ves. sen. 208. These decisions are approved and confirmed by Lord Thurlow, in *Barnes* v. *Allen*, 1 Bro. C. C. 181. In that case there was a devise of personal estate to the testator's wife for life, and if she should die without issue living at her death, to his two brothers, or if one of them should be dead, to the survivor. They both died in the life time of the wife; and it was held that the legacy to the brothers was so vested in right, notwithstanding the contingency, as to go to the representative of the survivor; and the same point was again decided in *Devisme* v. *Mello*, 1 Bro. C. C. 537. The law on this point was recognized as fully settled, in *Jones* v. *Roe*, 3 T. R. 88 The question was, whether an executory devise were devisable; and it was decided that it was. It was admitted, by the counsel who maintained the negative, that such a contingent interest was transmissible, and that a mere right of entry, whereby a party might by entry for condition acquire an estate, was de-

scendible But the argument was, that a mere possibility was not assignable at law, and consequently not devisable. But the court held clearly that executory devises were transmissible and devisable; that they were not mere possibilities, but in the nature of contingent remainders; and that there was no doubt but that such estates were transmissible and consequently devisable. Buller, J. says, that such an interest is descendible, "because the person taking it has an interest in the lands, which is known to the law;" and that "the cases on this subject have been uniformly determined in the same way for nearly fifty years past." And Lord Kenyon says, in the close of his opinion, "I sincerely hope that this point will be now understood to be per fectly at rest." And so it seems to have remained ever since.

From these and numerous other authorities cited by the plaintiff's counsel, it is manifest, that the rule, as laid down by Fearne, has long been settled as the law of England. The principle is, that a contingent interest either in real or personal estate may so vest as to be transmissible to the heir, or executor, or administrator of the person to whom it is given, if he should die before the contingency happens. It is objected by the defendants' counsel, that there is an important qualification of this rule, that where the existence of the devisee of a contingent interest at some particular time by implication makes a part of the contingency, and enters into it, the contingent interest cannot descend. This is undoubtedly true; and upon the construction of the will contended for by the defendants' counsel, namely, that the devise was limited to the children living at the death of their mother, the objection would be decisive against the plaintiff's claim to the shares of the two children who died before that time. But, for the reasons already given, we are of opinion that no such implication can be deduced from the language of the present will. All the children, by the devising clause, were manifestly the intended objects of the testator's bounty; and it cannot be implied, from the subsequent clause, that he intended that the issue of such of the children, as might die in the life time of the mother, should not take the shares devised to such deceased children, which would be the effect of the defendants' construc-

tion of the will.   Nothing but the clearest manifestation of such an intention would justify such a construction.

But the defendants' counsel rely principally on several cases in our own reports, by which it is contended, that however the law on this point may be in England, it has been settled in this Commonwealth, that a contingent remainder, before the contingency happens, is not transmissible to the heir or representatives of the remainder-man.   But from the reports of these cases, it does not appear that the question under consideration has ever been argued by counsel or considered by the court.   And in only one of the cases cited is it involved in the decision.   That is the case of *Denny* v. *Allen*, 1 Pick. 147.   The will, in that case, was very similar to the one now under consideration.   The testator gave the use and improvement of his real estate to his wife during her life, and the reversion to and among all the children of his brothers and sisters.   And his personal estate he bequeathed to trustees, in trust for the use of his wife during the time she should remain his widow ; but if she should survive her brother Joshua Henshaw, then it was to become her absolute property ; and in case of her marrying again, or dying before her said brother, then the personal estate was thereupon given to and among all the children of his brothers and sisters.   In a codicil he afterwards adds, " my will and meaning is, that in case any of my real and personal estate should remain undisposed of after my wife's decease, that the same be equally divided between my nephews and nieces."   The court held, on the authority of *Dingley* v. *Dingley*, that the nephews and nieces, living at the decease of the testator's wife, and the heirs of those who had died before, were entitled to their respective shares of the real estate but that with respect to the personal estate, only those nephews and nieces were entitled, who were living at the death of the wife.   According to the report, it was observed by the court, that " the general principle to be extracted from the cases in the books is, that when the devise is to take effect upon a future event, it shall be considered that the testator had in view all those of the class to which he intended his bounty, who should be capable of taking when the event happens."   It is difficult to ascer

tain, from this short and imperfect report, what were the grounds of this decision. If it was decided upon the supposed intention of the testator, there seems to be no good reason why the same persons should not be entitled to the personal as well as the real estate; for the codicil disposed of both in the same words.

If however it was decided on the distinction between the other clauses in the will, the remainder of the real estate being vested, and that of the personal estate being contingent, then it seems clear that the question, as to the transmissibility of a contingent remainder or executory devise, was not argued or suggested in the argument of the cause; and it is not surprising that it should have been overlooked by the court. Most certainly the court did not intend to overrule the numerous English cases on this point; for if they had so intended, unquestionably the principle would have been fully discussed, and the reasons therefor assigned. So far from intimating any such intention, the court profess to decide the case on a " principle extracted from the cases in the books." In regard to the present question, therefore, the decision in that case can have but little weight. And in all the other cases, cited by the defendants' counsel, this question is not decided nor raised. Some reliance is placed on a dictum of Chief Justice Parsons in *Dingley* v. *Dingley*, 5 Mass. 537, which is repeated in another case. This dictum however is not supported by the English authorities cited by the plaintiff's counsel, and the case of *Shattuck* v. *Stedman* is directly opposed to it. In that case, the testator bequeathed to his niece the interest of $1000 during her life, and at her decease the principal sum to be equally divided among her children, and payable to them at the respective ages of 21 years with interest. A son of the niece survived the testator, but died before his mother. And it was held that he took a vested legacy. But the dictum of Chief Justice Parsons is not material in the present case. He says, that in such a case the legacy would be contingent, so as to let in after-born children; but he does not say or intimate, that if one of the devisees of a remainder of a chattel, after a devise to another for life, should die before the devisee for life, his share would not go to his execu

tor or administrator. The question is not whether by the devise to the children of Mrs. Winslow they took a vested or a contingent remainder, for undoubtedly the remainder to them was contingent before the death of their mother, so that the law, as laid down by Chief Justice Parsons, has no application to the question now under consideration. The decisions of the court in *Dingley* v. *Dingley*, and in *Shattuck* v. *Stedman*, are authorities in support of the plaintiff's counsel's construction of the will in the present case.

In the case of *Blanchard* v. *Brooks*, the question was whether a contingent remainder would pass by way of estoppel by a deed of conveyance with warranty. The question now under consideration was not raised or alluded to in the decision of that case. It was declared, it is true, that a contingent remainder was not assignable at law, except by way of estoppel. But it is well settled, that a possibility coupled with an interest is assignable in equity, and is devisable and transmissible, as clearly appears by the authorities already cited. 3 T. R. 88. Fearne, (7th ed.) 369.

In *Emerson* v. *Cutler*, 14 Pick. 108, it was held that the devise of the real and personal estate to the testator's children, after the decease of their mother, gave a *joint* interest in the personal estate, and so the survivors took the whole on the death of one of the children. In *Dixon* v. *Picket*, 10 Pick. 517, the devise was to the testator's wife for life, and afterwards to all her children who should be living at her decease; and the case of *Hancock* v. *Hancock* was decided on a similar devise.

From the examination of these authorities, it will be perceived how little ground there is for maintaining that the law of this Commonwealth, as to the question under consideration, has been settled in opposition to the law of England. There is no case but *Denny* v. *Allen*, 1 Pick. 147, from which any such inference can be made; and the decision in that case, for the reasons already given, must have little weight against the current of the English authorities, on a question which was only incidentally involved, and which does not appear to have been argued or deliberately considered. Notwithstanding that case,

therefore, we consider the law, as laid down in the English cases cited, to be the unquestionable law of this Commonwealth; and it is clearly confirmed by our statutes of descent and distribution.

By *St.* 1805, *c.* 90, § 1, it is provided " that when any per son shall die seized of any lands, tenements, or hereditaments, or of any right thereto, or entitled to any interest therein, in fee simple, or for the life of another, not having lawfully devised the same, the same shall descend," &c. In the second section, a similar provision is contained in respect to personal property. These provisions are reënacted in the Rev. Sts. *c.* 61, § 1, and *c.* 64, § 1.

In the case of *Cook* v. *Hammond*, 4 Mason, 467, it was decided, after a very able discussion of the question as to the construction of the first provision in the *St.* of 1805, *c.* 90, that remainders and reversions, vested by descent in a person who may die intestate, descended to his heirs, in the same manner as estates in possession. No question was raised, in that case as to contingent remainders and executory devises. But the statute makes no distinction between vested and contingent remainders; and there seems to be no reason for any such distinction, especially as no distinction in the law existed before the statute. The language of the statute is unambiguous. If an intestate is entitled to any interest in real or personal estate, vested or contingent, it will pass by force of the statute to his heirs or administrator, in the same manner as estates in possession.

As to the remaining question, we think there can be no doubt that the plaintiff is entitled to the share of Caroline L. Winslow, who survived her mother. On the death of the mother, as before remarked, the equitable estate vested in the minor children; the legal estate being in the trustees for their support and education until they should respectively arrive at full age. Their arriving at that age is not a condition, or the contingency, on which their shares were to vest, but is the time designated when the trust was to cease, and they to beccme entitled to possession

We are therefore of opinion, upon the whole matter, that the plaintiff is entitled to the shares of his three children who have died without issue, and that a decree in his favor is to be entered accordingly.